**In re Joan C. MALLEN, Debtor.**

**Henry L. MAURER, Nydia Maurer, Plaintiffs,**

**v.**

**Joan C. MALLEN, Defendant.**

**Bankruptcy No. 91–21425–T.**
**Adv. No. 91–2131–T.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Aug. 10, 1992.

Kenneth L. Ford, Norfolk, Va., for debtor.

Samuel R. Brown, II, Virginia Beach, Va., for plaintiff.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On December 13, 1991, trial was held in the above-styled adversary proceeding on the plaintiffs' complaint to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A). Both plaintiffs and defendant appeared in person and were represented by counsel. At that time the court ruled from the bench in favor of the defendant. This memorandum opinion supplements that ruling.

## FACTS

Plaintiffs (50%) and defendant (50%) were sole stockholders of M & M (USA), Incorporated, a corporation which they had formed on about August 1, 1989, to engage in the business of producing and selling egg rolls. By an agreement dated August 31, 1989, the parties agreed for the plaintiffs to sell their shares in the corporation to the debtor in exchange for $100,000.00 plus the debtor's assumption of all corporate liabilities. Although the agreement called for payment in full at settlement, a promissory note dated August 31, 1989, and executed by debtor as part of the purchase agreement, provided for payment in two $50,000.00 installments, the first to be paid on October 31, 1989, and the second on April 30, 1990.

Debtor borrowed $186,105.05 from Amphibious Base Federal Credit Union to finance the stock purchase and to consolidate existing corporate loans. Conditions of that loan required debtor at settlement to pay the $100,000.00 note executed on August 31, 1989, and to satisfy an additional $30,000.00 debt of the corporation to Commerce Bank.

Settlement on debtor's stock purchase was held on September 14, 1989, in the office of the credit union's attorney and was attended by debtor and Mrs. Maurer. Mr. Maurer did not attend but authorized his wife to sign documents for him. As part of the settlement, the attorney issued two $50,000.00 checks, representing debtor's payment of the $100,000.00 note for the purchase price. One of the checks was payable to Mr. Maurer and debtor and the other to Mrs. Maurer and debtor. Additionally, the attorney issued a check for $30,000.00 to repay the corporation's Commerce Bank loan. Also at settlement, Mrs. Maurer surrendered the plaintiffs' endorsed stock certificates; these shares purchased by debtor were later pledged to the credit union as security for her loan. Debtor also gave the credit union a security interest in the corporate assets.

1. The plaintiffs had originally purchased their shares of stock with proceeds from a $100,-000.00 loan from Commerce Bank which was secured by a $100,000.00 certificate of deposit.

Both Mrs. Maurer and debtor left the settlement table and immediately proceeded to Commerce Bank to deliver the $30,-000.00 loan payment check and to allow Mrs. Maurer to endorse the two $50,000.00 checks which were to be used by the plaintiffs to satisfy their own $100,000.00 note held by the bank.[1] In route, debtor was able to persuade Mrs. Maurer to endorse and return to debtor one of the $50,000.00 checks even though Mrs. Maurer knew that their agreement required full payment of debtor's $100,000.00 note at settlement. Debtor thus retained this sum of money from the transaction, and she never repaid this balance to plaintiffs.

### Discussion And Conclusions

Plaintiffs filed a complaint asking this court to except the $50,000.00 debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). The complaint alleged that the debtor by "deception, trick and fraud" convinced Mrs. Maurer that the entire $100,000.00 purchase price was not due on the settlement date and to endorse and return the $50,000.00 check to debtor.

■ Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge a debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition". 11 U.S.C. 523(a)(2)(A). The plaintiff bears the burden of establishing fraud by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ This is not the typical fraud case. Notwithstanding the plaintiffs' allegations of deception and trick in Mrs. Maurer's releasing the $50,000.00 check to debtor, Mrs. Maurer's own testimony plainly revealed that she understood the basic terms of the stock purchase agreement which called for full payment at settlement and transfer of the stock.[2] When the debtor

2. There were a number of discrepancies between the testimony of Mrs. Maurer and debtor concerning the events immediately following

suggested keeping $50,000.00 Mrs. Maurer at first protested. She was eventually persuaded to voluntarily release one of the checks but not because she ever believed she was entitled to only one of the checks on the settlement date. Simply put, debtor prevailed over Mrs. Maurer's better judgment to retain the $50,000.00.

In the court's view, mere persuasion by a strong personality does not ordinarily amount to fraud, absent some false pretense or misrepresentation upon which the victim reasonably relies. Here, the plaintiffs' fraud allegations are further undercut by their testimony that they made no protest of debtor's conduct at the time and apparently remained on friendly terms with debtor for some time after the transaction.

settlement. The court has for the most part

accepted Mrs. Maurer's version.